RANDY S. GROSSMAN
Acting United States Attorney
Daniel C. Silva
California Bar No. 264632
Mark W. Pletcher
Colorado Bar No. 034615
Assistant United States Attorneys
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 546-9713
Daniel.C.Silva@usdoj.gov

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br>   v.<br><br>LIANG ZHOU,<br><br>           Defendant. | Case No. 20-CR-03084-DMS<br><br>UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM<br><br>Date: September 2, 2021<br>Time: 9:00 a.m.<br>        HON. DANA M. SABRAW |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, RANDY S. GROSSMAN, Acting United States Attorney, Daniel C. Silva and Mark W. Pletcher, Assistant United States Attorneys, and hereby files its Sentencing Memorandum pursuant to Federal Rules of Criminal Procedure, Rule 32, and Local Rules of Practice for the United States District Court for the Southern District of California, Rule 32.1, for defendant LIANG ZHOU ("Defendant").

The United States recommends that the Court impose a sentence on Defendant of: 8 months in custody; forfeiture of $446,330; no fine; 3 years supervised release; and a special assessment of $100.

I. **STATEMENT OF THE CASE**

On October 7, 2020, the United States filed a single-count Information charging Defendant LIANG ZHOU with operating an unlicensed money transmitting business, in

violation of Title 18, United States Code, Sections 1960 and 2. Doc. No. 1 (the "Information"). On the same day the Information was filed, Defendant entered a Plea Agreement admitting his violation of Title 18, United States Code, Sections 1960 and 2. Doc. No. 8 (the "Plea Agreement"). The Plea Agreement included a forfeiture addendum, wherein the parties agreed to the forfeiture of $446,330. Doc. No. 8-1.

Within the Plea Agreement, Defendant waived the right to appeal and to collaterally attack every aspect of the conviction and sentence, including forfeiture; provided that the custodial sentence imposed by the Court does not exceed the high end of the Guideline range recommended by the United States, or Defendant received effective assistance of counsel. Plea Agreement, at XI.

## II. STATEMENT OF RELEVANT FACTS

Section II.B. of the Plea Agreement states the operative facts. In summary, by 2018 and continuing through November 2019, Defendant conducted the operations of an unlicensed money transmitting business ("MTB") to transfer money, funds, and other value between the United States and China—all outside the conventional financial system. In one type of transaction, among several that Defendant conducted through his MTB, Defendant received U.S. dollars in cash from a customer in the United States, whereupon he transferred the equivalent value of Chinese currency (e.g., yuan) from his bank account in China to the customer's Chinese bank account. Defendant conducted the inverse transaction as well through his MTB. That is, he collected U.S. dollars from various third-parties in the United States and sold that cash to a customer, whereupon the customer transferred the equivalent value of yuan from the customer's Chinese bank account to a Chinese bank account designated by Defendant.

Between 2018 and November 2019, Defendant transacted no less than $446,330 through his unlicensed MTB, the majority of which were transactions intended to evade domestic and foreign laws regarding monetary transfer and reporting.

///

///

## III. GUIDELINES CALCULATION

### A. Total Offense Level

The offense level for violating Title 18, United States Code, Section 1960 is largely based on the value of funds transmitted. Thus, over and above the base offense level of 6 (USSG § 2S1.3(a)(2)), the Guidelines add 12 levels under USSG §§ 2S1.3(a)(2)/2B1.1(G) because Defendant transacted at least $250,000. Defendant receives an additional 2-level upward adjustment pursuant to USSG § 2S1.3(b)(1) because the transmitted funds constituted proceeds of unlawful activity.

The United States requests that Defendant receive a 3-level downward adjustment under USSG § 3E1.1(a) for his acceptance of responsibility. The United States requests that Defendant further receive a 2-level downward adjustment pursuant to USSG § 5K2.0 for a combination of circumstances that are present to a substantial degree, but not entirely or adequately taken into consideration by the USSG. The first circumstance is that Defendant entered into the Plea Agreement at an early stage of this investigation, during the Covid pandemic, all while the investigation continues and has resulted in three other individuals pleading guilty. The second circumstance is that the underlying facts of Defendant's MTB operations, and the specific nature of the international underground transactions, extends a series of prosecutions in the Southern District of California that sends a significant deterrent message throughout the Southwestern United States.

### B. Custodial Sentence

Because Defendant has no criminal history, his Guideline sentencing range at an adjusted offense level of 11 is 8-14 months.[1] The statutory maximum custodial sentence for this offense is 5 years. In the Plea Agreement, the United States agreed to recommend a sentence within the advisory Guidelines range. The United States therefore recommends a custodial sentence of 8 months. The PSR recommends Defendant serve 8 months as well. Doc. No. 16, ¶ 81.

In support of this recommendation, the PSR notes that to "run a legitimate

---

[1] Under a separate filing under seal, the United States further recommends a 4-level departure under USSG § 5K.

3

MTB"—which Defendant failed to do here—the MTB must establish an anti-money laundering program to scrutinize the "source of the money" that passes through the MTB. PSR, ¶ 11. The significance here is that Defendant operated a financial institution that was an onramp to the global financial system without concern for the source, destination, or ownership of the funds, nor with any regard for the purpose of the transactions. These anti-money laundering duties are universally imposed on all U.S. financial institutions, including casinos and MTBs. Due to his failure to scrutinize the source and purpose of the transactions through his MTB, as well as not maintaining the required records and filing the required reports on transactions through his MTB, the United States was unable to identify with accuracy the "who, what, why, and where" of Defendant's MTB customers and beneficiaries. This concealment and opacity are the exact dangers posed by unlicensed MTBs and why Title 18, United States Code, Section 1960 prohibits them criminally; all of which warrants a sentence within the Guidelines range.

### C. Fine

Pursuant to USSG § 5E1.2(c)(3), an offense level of 11 calls for a fine range of $4,000 to $40,000. Title 18, United States Code, Section 3571(b)(3) caps the maximum fine for this offense at $250,000. The Guidelines lay out factors the Court should consider when imposing a fine, including the need for the combined sentence to reflect the seriousness of the offense and promote respect for the law. USSG § 5E1.2(d). The United States concurs with the PSR's recommendation that this Court not impose any fine on Defendant. PSR, ¶ 88. Chief among these considerations is Defendant's forfeiture of $446,330, which was involved in the operation of his MTB.

### D. Supervised Release

The Court may impose a statutory maximum 3-year term of supervised release. Title 18, United States Code, Section 3583(b)(2). The United States concurs with the PSR's recommendation for a 3-year term of supervised release, along with probation's recommended conditions of supervision. PSR, ¶¶ 82-6.

///

## IV. TITLE 18, UNITED STATES CODE, SECTION 3553 FACTORS

The ultimate sentence must be sufficient, but no greater than necessary, to satisfy the purposes and factors set forth in Title 18, United States Code, Section 3553(a). While the Court has an obligation to consider the Guidelines, the USSG calculation is simply one factor when determining an appropriate sentence. *United States v. Booker*, 534 U.S. 220, 257 (2005). Nothing in Section 3553 suggests that the Guidelines are to be given any greater weight that their fellow sentencing factors. *United States v. Zavala*, 443 F.3d 1165, 1171 (9th Cir. 2006). Instead, the Guidelines act as a "starting point" for the District Court." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

### A. The Nature and Circumstances of the Offense and the Characteristics of the Defendant

Defendant operated an unlicensed MTB through the receipt and delivery of United States currency in return for intra-China bank transfers. As described in more detail in a separate, concurrent filing under seal, some of the casinos that referred customers to Defendant themselves failed to maintain an adequate anti-money laundering program to detect, report, and discourage Defendant's conduct, or otherwise to conduct due diligence into the nature and purpose of his MTB operations. The failures of other third-parties are not mitigating factors in Defendant's offense. Rather, these show that Defendant and his extended network of MTB operators exploited the lax, limited, or otherwise ineffective compliance by larger financial institutions.

Defendant has no prior criminal history. PSR, ¶ 28. When law enforcement officers initially approached Defendant, he was generally cooperative, and voluntarily consented to a search of his phones. Cooperation with the government is a relevant factor for the Court to consider when weighing the nature and circumstances of offense and history and characteristics of a defendant. *United States v. Huerta*, 878 F.2d 89, 93 (2d Cir. 1989).

### B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Protect the Public

A sentence of imprisonment within the Guidelines range will ensure that Defendant appreciates the seriousness of his conduct, and the harm his conduct caused

5

the global financial system. There is, however, limited ability for the sentence to protect the public. Defendant has no criminal history, has no history of violence, and should have no reason to continue facilitating, and profiting from, unlicensed MTB transactions.

### C. The Need for the Sentence Imposed to Afford Adequate General Deterrence

A sentence within the Guidelines range will deter other individuals engaging in similar unlicensed MTB conduct. This is particularly important for individuals operating MTBs that provide currency delivery services to customers throughout the United States who maintain bank accounts abroad, and which can be accessed through mobile devices within the United States. Law enforcement throughout the world is beginning to recognize the breadth and threat that these underground banking networks pose to the financial system. And though the funds here were not demonstrably proceeds of other underlying, and potentially more concerning, crimes, it is not difficult to envision how easily criminal organizations could exploit unlicensed MTBs like Defendants, or even operate their own as a way to launder unlawful proceeds of crime.

There has only been one sentencing of an individual in the Southern District of California (or, to the undersigned prosecutor's knowledge, anywhere in the United States) for operating a China-focused, unlicensed MTB in violation of Title 18, United States Code, Section 1960. The sentencing occurred in this district. *See United States v. Zhang*, 20-CR-00370-WQH (S.D.Cal., June 2, 2021), Doc. No. 44. The next section discusses that sentence, and the need to avoid unwarranted sentencing disparities. As for the need to provide deterrence, Judge Hayes stated that defendant Lei Zhang, whose unlicensed MTB involved approximately $150,000, was able to transact a "significant amount of money that is untraceable". *Id*, at 10:22-23. The same reasoning applies here to Defendant. It is therefore appropriate to sentence Defendant within the Guidelines range to deter others involved in this activity.

### D. The Need to Avoid Unwarranted Sentencing Disparities

As this Court is aware, there have recently been a significant amount of early and

compassionate releases for defendants who have underlying health conditions, are near the end of their custodial term, or due to other factors like age. As of August 17, 2021, the Bureau of Prisons has released nearly 30,000 inmates to home confinement since March 2020. *See* https://www.bop.gov/coronavirus/faq.jsp (updated regularly). Defendant is notably healthy, without any history of serious health problems, and does not have any history of controlled substance use. PSR, ¶¶ 38-48.

Setting aside the impact of sentences influenced by Covid-19, the conviction and sentence of Lei Zhang is nearly identical to Defendant's here: both operated unlicensed MTBs that were China-focused, offering cash processing and deliveries, for a clientele largely composed of gambling patrons. Although Defendant transacted nearly three times as much as Mr. Zhang ($446,330 as compared to $150,000), the United States recommends seven months less for Defendant primarily due to the departures. Considering all these factors, an 8-month sentence does not create an unwarranted sentencing disparity.

## V. **CONCLUSION**

For the reasons stated above, the United States recommends that the Court impose a sentence for Defendant of: 8 months in custody; forfeiture of $446,330; no fine; 3 years supervised release; and a special assessment of $100.

DATED: August 18, 2021

Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

s/ Daniel C. Silva
DANIEL C. SILVA
MARK W. PLETCHER
Assistant U.S. Attorneys