

3200 N. Central Avenue, Suite 2250
Phoenix, Arizona 85012
(602) 280-1000 Office; (602) 265-1495 Fax
Christopher T. Rapp, AZ State Bar No. 013374
Email: ctrapp@rrulaw.com
Andrew C. Pacheco, AZ State Bar No. 018105
apacheco@rrulaw.com
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, v. **LIANG ZHOU**, Defendant. | No. 20-CR-03084-DMS <br><br> **DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE** <br><br> *(Assigned to the Hon. Dana M. Sabraw)* |

Defendant Liang Zhou (herein "Mr. Zhou"), by and through undersigned counsel, hereby submits his Sentencing Memorandum and Request for Variance for this Court's consideration at the Sentencing scheduled for October 21, 2021.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PROCEDURAL HISTORY

On October 7, 2020, Mr. Zhou entered a plea of guilty to a violation of 18 U.S.C. § 1960(a), Unlicensed Money Transmitting Business, a class D felony. As set forth in the Presentence Report, Mr. Zhou was involved in conducting and operating an informal and unlicensed money transmitting business to transfer money between China and the United States beginning in or around 2018 and continuing through November 2019.

Mr. Zhou agrees with the Government's determination of the appropriate offense level as set forth in the Government's Sentencing Memorandum filed on August 18, 2021 (Doc. 21). The adjusted offense level is 11 with a sentencing range of 8-14 months (Doc. 21

at 3). According to the plea agreement, Mr. Zhou is permitted to seek a variance under the 18 U.S.C. § 3553 factors. Mr. Zhou agreed to forfeiture of $446,330, with an offset for the $180,000 that he already forfeited.

## II. INTRODUCTION

Mr. Zhou came to the United States seeking a better life. He married, naturalized, and started a family. He and his wife worked hard, and provided assistance to their aging parents. Unfortunately, Mr. Zhou drew the government's attention after he began supplementing his income by helping people send money to and from China for a small fee. Although he realized it was not permitted by law, he did not appreciate that he was committing a federal crime. Once contacted by the agents, however, he understood his transgression. He immediately and fully cooperated with the agents, shut down his business, gave up nearly $200,000 of proceeds, and pled guilty at his first appearance. Having pled to a felony, the only question is the appropriate sentence. The government recommends 8 months. As a first offender who already learned his lesson, Mr. Zhang asks for a non-custodial sentence, which will allow him to keep working to support his family and pay restitution.

As discussed below, Mr. Zhou respectfully submits that application of the sentencing factors to this case, considering his personal history and characteristics, should result in probation or, in the alternative, a period of home confinement.

### A. Nature and Circumstances of the Offense.

Mr. Zhou cooperated with the government's investigation into the current offense prior to charging, in addition to cooperating in his own prosecution. Mr. Zhou admitted that he was engaged in criminal activity as the middleman in transfers of funds between China and the United States. Mr. Zhou turned over hundreds of pages of Chinese bank account information to the Government to assist in its efforts to identify offenders. Mr. Zhou quickly admitted to his conduct once questioned and worked with the Government to enter into a plea agreement that would avoid the Government expending additional resources to seek an

indictment or proceed in a lengthy criminal proceeding.

## B. History and Characteristics of Mr. Zhou.

Mr. Zhou is a 38-year-old American citizen with two young children. He has no criminal history and is not a risk to reoffend. He immigrated to the United States from China in 2005 when he was approximately 25 years old. Mr. Zhou's parents and siblings largely remained in China. Mr. Zhou settled in Las Vegas, Nevada where he lives with his wife and children. Upon moving to the United States, Mr. Zhou knew very little English and had no significant exposure to American culture. He came here, as many do, to enjoy the freedoms and opportunity that America has to offer. In 2010, Mr. Zhou married his wife Hebing Wang and they had two children – Eric (7) and Beverly (5). Mr. Zhou and Ms. Wang maintain a loving and supportive relationship. Mr. Zhou continues to have the support of his wife and family, as well friends within the community.[1]

Mr. Zhou found work quickly upon moving to the United States and remained gainfully employed until the Covid-19 pandemic. As set forth in the PSR, most of Mr. his work experience is in the restaurant industry – an industry that thrived in Las Vegas and created significant job opportunities. Mr. Zhou worked hard to support to his family. In 2019, Mr. Zhou got a position working as a manager in a wellness spa. The job paid well and allowed the family to become more financially secure. However, that position was terminated due to no fault of Mr. Zhou. In March 2020, because of the Covid-19 pandemic, Mr. Zhou was laid off. As this Court may know, Las Vegas was one of the hardest hit metro economies in America because of the Covid-19 pandemic.[2] The Las Vegas Convention and Visitor's Authority found a 44.5 percent overall drop in tourism-related employment.[3]

---

[1] *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (affirming downward variance from a guideline range of 41-51 months to 5 years' probation based in part on finding that the defendant had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had the continuing support of his family).

[2] Alicia Wallace, "Las Vegas, the hardest-hit metro economy in America, just suffered another blow" CNN Business (Jan. 13, 2021); https://www.fox5vegas.com/coronavirus/las-vegas-the-hardest-hit-metro-economy-in-america-just-suffered-another-blow/article_a1777cd7-e746-5107-82c8-abf0a5f484ba.html.

[3] "The Impact of Covid-19 on the Southern Nevada Tourism Industry", https://res.cloudinary.com/simpleview/image/upload/v1624476915/clients/lasvegas/COVID_Impact_on_Tourism_Industry_FINAL_c415242c-e6f4-4bf5-91ea-98496d1afe3a.pdf.

As a result of Mr. Zhou's unemployment, his wife had to increase her hours to full-time to provide for the household. This was a difficult transition for the family since Ms. Wang was the family's caretaker. Ms. Wang speaks fluent English, which has allowed more opportunity in retail than Mr. Zhou has currently in the restaurant or spa industries. Ms. Wang was hired by Chanel and has continued to work there for the past several years. Mr. Zhou has become the primary caretaker for the two minor children since his unemployment. Although Mr. Zhou continues to do some limited work in food delivery, it is limited because of the time commitment needed for his caretaking responsibilities for his children and in-laws. Mr. Zhou is tasked with getting the children to school and picking them up, cooking for them, and performing the daily tasks around the house.

In addition, Mr. Zhou is caring for Ms. Wang's parents. Ms. Wang's mother is suffering from late-stage cancer and requires daily care from Mr. Zhou.[4] Ms. Wang is working at least 8 hours a day and is unable to perform the daily tasks for her mom. Neither of Mr. Zhou's in-laws drive, so they rely on him to take them to doctor appointments, stores, pharmacies, etc. Mr. Zhou serving time in prison would prevent from Ms. Wang continuing her employment because of the need to care for both the children and her parents. These caretaker roles take a substantial amount of time and they have no other family in the area that is able to assist. This would have a devastating impact on both Mr. Zhou's wife and children, as well as his in-laws who rely on him.[5]

Mr. Zhou's mom is also suffering from cancer. She lives in China and is not doing well. Although Mr. Zhou maintains regular contact with her and his brother, he understands that his actions in this case will prevent him from returning to China for a significant period. This has been very upsetting to Mr. Zhou, but he understands that his actions have caused

---

[4] *United States v. Munoz-Nava*, 524 F.3d 1137, 1148 (10th Cir. 2008)(upholding Court's consideration that defendant cared for his eight-year-old son as a single parent and had elderly parents with serious medical problems).

[5] *United States v. Lehmann*, 513 F.3d 805 (8th Cir. 2008) (affirming a downward variance to probation where the district court found that a prison sentence would negatively affect the defendant's disabled young son). Unlike in *United States v. Carter*, 510 F.3d 593 (6th Cir. 2007), the defendant's absence will not be mitigated by Mr. Wang's continued presence in the home and the family's receipt of substantial healthcare.

4

this unfortunate result. Mr. Zhou is hopeful that he can prove to the Court that he can be a successful and law-abiding citizen moving forward and he sincerely hopes that he has opportunity to see his mom again in person.

Since the conduct at issue, Mr. Zhou has remained crime free. He has no prior criminal history or significant interactions with law enforcement. Mr. Zhou has spent his time since this case focused on his family, self-improvement, and trying to overcome the immense remorse he feels for his conduct.[6] The consequences weigh heavily on him. During the presentence interview, Ms. Wang indicated some personality changes in Mr. Zhou since this case was initiated, including increased consumption of alcohol. In discussions with Ms. Wang, those issues have largely resolved.

The family has spent a great deal of time working through Mr. Zhou's depression and is dedicated to moving forward. To the extent any issues remain, Mr. Zhou is better treated through probation where he can be monitored and receive any assistance the probation department feels is necessary. Prison would only increase the depression and financial struggles of the family and would hamper the progress Mr. Zhou has made in the past year. Mr. Zhou will continue to have the support of his family and his behavior shows he is not a risk to reoffend and is a good candidate for rehabilitation.[7]

Mr. Zhou is distraught over his actions. He makes no excuses for his conduct and accepts full responsibility for what he has done. Mr. Zhou does not appear to have obtained a substantial financial benefit from his conduct; although, he acknowledges there was some financial benefit for him. He is dedicated to working as hard as he can to pay the required restitution. All he asks is that the Court consider the circumstances of his family and his lack of criminal history in determining that probation or home arrest is the appropriate sentence in

---

[6] *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008) (affirming downward variance based on defendant's lack of significant criminal history, depression at the time of the offense, lack of repeat offending by the defendant after his arrest, significant self-improvement efforts during the year and half in which he waited to be prosecuted, and that the defendant's age at time of offense).

[7] *United States v, Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on "the support that the defendant stood to receive from his family [and] personal qualities indicating his potential for rehabilitation.").

5

this case.

**C. Need for Sentence to Address Additional 18 U.S.C. § 3553 Factors (18 U.S.C. § 3553(a)(2))**

Mr. Zhou humbly asks the Court to find that the requested sentence of probation, with the ability for home detention, is reasonable. He has no prior criminal history and has always endeavored to be a productive family man and member of society. Mr. Zhou understands and accepts that a felony conviction and probation are required to address the seriousness of his criminal conduct and to have a deterrent value to Mr. Zhou and others. The impact of the felony conviction is a deterrent factor for any further conduct to Mr. Zhou and others. Mr. Zhou's offense was not a dangerous crime and did not pose the same danger to the community as many other crimes a similar sentencing ranges does.[8]

**D. The kinds of sentences available; and the kinds of sentences and the sentencing range as set forth in the Sentencing Guidelines.**

Mr. Zhou agrees with the Government's guideline calculations. The additional two-level downward departure is appropriate for the reasons stated by the Government including Mr. Zhou's acceptance of responsibility, which was clearly demonstrated during his presentence interview. The additional four-level downward departure is also appropriate based on the Government's under seal filing.

The Government is recommending a low-end sentence of 8 months, as does Probation.

At level 11, Mr. Zhou falls into Zone B. Even without consideration of the § 3553 factors, Zone B allows for a period of probation with a combination of intermittent confinement, community confinement, or home detention. §5B1.1(a)(2), and in such circumstances, the Guidelines themselves strongly suggest a non-custodial sentence. The

---

[8] *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (affirming a downward variance to probation in a case involving the sale of counterfeit access cards in violation finding that it "[di]d not pose the same danger to the community as many other crimes").

Commentary to the imprisonment provision specifically states, "If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, *the court should consider imposing a sentence other than a sentence of imprisonment.*" USSG §5C1.1, n.4 (emphasis added).

**E.     The Sentencing Guidelines policy statements.**

Pursuant to 18 U.S.C. § 3553(a)(5), Mr. Zhou requests the Court consider the following Policy Statements:

1.     <u>Family Ties and Responsibilities (USSG § 5H1.6)</u>

   a.     Mr. Zhou's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to his family;

   b.     The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant;

   c.     The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making Mr. Zhou's caretaking or financial support is irreplaceable to Mr. Zhou's family;

   d.     The departure effectively will address the loss of caretaking or financial support.

There is no way for Ms. Wang to maintain employment, care for the kids, and care for her mom and dad in Mr. Zhou's absence. There is no other family close by that can assist in the caretaking responsibilities. The family does not have the financial means to hire someone to assist. Moreover, Mr. Zhou will owe a substantial amount of restitution in this case. The financial devastation if Ms. Wang loses employment, will cause complete financial devastation to this family. Mr. Zhou and Ms. Wang are fortunate that she has been able to maintain stable employment throughout the pandemic and they are cognizant of the financial devastation loss of that employment would be to their family.

**F. The need to avoid unwarranted sentencing disparities.**

There appears to be only one case where a similar sentencing has occurred during the pandemic. However, the *Zhang* case is not an apt comparison. First, Mr. Zhou is a lower offense level. Defendant Zhang did not have the substantial mitigating circumstances this case has. In fact, the only request for consideration made was based on fear of Covid-19 if he were incarcerated.[9] There did not appear to be any additional mitigating factors.

Further, the level of cooperation involved in Mr. Zhang's case appears substantially lower than the cooperation provided by Mr. Zhou. Mr. Zhou was immediately cooperative with law enforcement, including by voluntarily consenting to a search of his phone which contained substantial evidence.

**G. The need to provide restitution to any victims of the offense.**

The Government and Mr. Zhou have stipulated that Mr. Zhou will pay full restitution of $446,330. Mr. Zhou has already forfeited $180,000. The remaining balance is $266,330. A non-custodial sentence will accelerate recovery to the Government.

## III. CONCLUSION

Based on the foregoing, Mr. Zhou respectfully requests that this Court sentence him to the term of probation. If the Court believes that some substitute punishment is warranted, then Mr. Zhou requests the Court consider a sentence of probation with home detention. MR. Mr. Zhou's conduct was out of character. He has remained law abiding since first being contacted by law enforcement and throughout the period of his release. The § 3553 factors support probation. Probation will allow him to continue as the primary caretaker for his children and his mother-in-law.

---

[9] *United States v. Zhang*, 20-CR-00370-WQH (S.D.Cal., June 2, 2021), Doc. No. 39.

8

RESPECTFULLY submitted this 11th day of October, 2021.

                                        **RYAN RAPP UNDERWOOD & PACHECO, P.L.C.**

                                        /s/    Christopher T. Rapp
                                        Christopher T. Rapp
                                        Andrew C. Pacheco
                                        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2021, I electronically transmitted the attached document to the clerk's office using the CM/ECF System for filing documents and sent the attached document to the following CM/ECF registrant(s): .

Daniel C. Silvia, Esq.
Daniel.C.Silva@usdoj.gov
Mark W. Pletcher, Esq.
Mark.Pletcher@usdoj.gov

/s/    Linda Eaton